```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
                      NORTHERN DISTRICT

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :   Criminal No. 18-CR-00278-CCB
                              :
    v.                        :
                              :
ANTONIO SANTIFUL,             :
                              :
         Defendant.           :   Baltimore, Maryland
                              :
- - - - - - - - - - - - - - - x   May 15, 2018
```

**DETENTION HEARING**

BEFORE:   THE HONORABLE A. DAVID COPPERTHITE, Judge

APPEARANCES:              PATRICIA C. McLANE, Esq.
                          Office of the U.S. Attorney
                          36 S. Charles Street
                          Fourth Floor
                          Baltimore, Maryland  21201
                            On Behalf of the Government

                          MARSHALL T. HENSLEE, Esq.
                          The Law Office of
                          Marshall T. Henslee, LLC
                          606 Baltimore Avenue
                          Suite 301
                          Towson, Maryland  21204
                            On Behalf of the Defendant

Audio Operator:           Jill Waryu

Transcription Company:    CompuScribe
                          5100 Forbes Boulevard
                          Suite 101
                          Lanham, Maryland  20706


Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

## **I N D E X**

|  | Page |
|---|---|
| Preliminary Matters | 3 |
| On Detention: | |
|     by Patricia C. McLane, Esq.<br>    On behalf of the Government | 4 |
|     by Marshall T. Henslee, Esq.<br>    On behalf of the Defendant | 9 |
| Finding -- Judge A. David Copperthite | 11 |

KEYNOTE:   "---" Indicates inaudible in transcript.

1          P R O C E E D I N G S

2          (Whereupon, at 2:44 p.m., the proceedings began.)

3          MS. McLANE:  The United States of America versus
4   Antonio Santiful.  Criminal No. 18-CCB-0278.  Patricia McLane
5   on behalf of the United States.  We are here for a detention
6   hearing.

7          THE COURT:  Okay.  Thank you.

8          MR. HENSLEE:  Good afternoon, Your Honor.  Marshall
9   Henslee, I am here on behalf of Mr. Santiful.  He is with me
10  here at the trial table.

11         THE COURT:  Mr. Henslee, good afternoon.
12  Mr. Santiful, good afternoon.

13         THE DEFENDANT:  Good afternoon, Your Honor.

14         THE COURT:  Are we proceeding with the detention
15  hearing?

16         MS. McLANE:  I believe we are, Your Honor.

17         THE COURT:  Okay.  And --

18         MR. HENSLEE:  We are --

19         THE COURT:  Yes.

20         MR. HENSLEE:  I was just going to say up front that
21  there was -- the person that I would be proposing is the
22  third party custodian, I was just on the phone with her.  And
23  she is right in the area.  She is having trouble finding
24  parking.  And frankly, I did as well.  But I would expect her
25  to be here any minute.

1      THE COURT: Okay. Have you all received a copy of
2 the Pretrial Services report?
3      MS. McLANE: Yes, Your Honor.
4      MR. HENSLEE: Yes.
5      THE COURT: You had an opportunity to review that
6 with Mr. Santiful?
7      MR. HENSLEE: I have gone over with him, yes.
8      THE COURT: Okay. All right. Ms. McLane, I will
9 hear from you and Mr. Santiful, Mr. Henslee, you can be
10 seated.
11      MR. HENSLEE: Thank you.
12      MS. McLANE: Yes, thank you, Your Honor.
13 Your Honor, in this case pursuant to 18 USC 3142, the
14 Government does enjoy the rebuttable presumption that
15 condition or combination of conditions are going to insure
16 the appearance or safety of the Defendant.
17      We believe that there is PC and I will get into
18 that in just a minute. And more importantly we believe that
19 there are simply no conditions that are going to keep the
20 community safe from Mr. Santiful.
21      Right off the bat, the Government does not have a
22 concern in terms of the flight -- in terms of him leaving
23 Baltimore. That is just not realistic in a case like this.
24 He does have two failure appears through his MVA, but again,
25 flight is not something that I am going to address here

1  today.

2          What I want to focus on is dangerousness to the
3  community.  And I think the case itself speaks to that as
4  well as Mr. Santiful's record.

5          This case, to give Your Honor an idea, because it
6  is not a speaking indictment and it looks like any generic
7  drug conspiracy case, began in November of 2017.  At that
8  time agents became aware of the three top individuals in that
9  indictment, Mr. Alston, Mr. Boykin and Mr. O'Cain.  Those
10 three gentlemen were known for violence in the area.  And
11 quite frankly, they performed violence in the areas, I will
12 get to, on Aril 3rd of 2018.

13         But agents started looking at those three
14 individuals and they found that they were selling drugs in
15 the 2100 block Aiken Street.  In January of 2018,
16 January 26th, ATF put a pole camera in the 2100 block of
17 Aiken Street.  At that time they were beginning to monitor
18 and identify individuals.  And they identifies several of the
19 individuals on the Indictment.

20         On February 1st of 2018, they were able to identify
21 Mr. Santiful and at that time he had a handgun in his
22 possession.  They sent Baltimore police detectives out to
23 the area.  And they identified Mr. Santiful.  They did not
24 find a handgun at that time.  But they began to watch again
25 Mr. Santiful dealing with this organization.

1        What is concerning is that on January, I believe

2   is 29th, somewhere between February 1st and January 26th,

3   they h ad already caught and arrested Mr. Wayne Chambers,

4   who again they saw with a handgun in his hand.  The sent BPD

5   to that same block.  This time they were able to actually

6   recover that handgun from Mr. Chambers in addition to heroin

7   and he was under arrest.  Mr. Chambers is indicated in this

8   Indictment although he was really only seen for three days in

9   that Indictment, because we had to take him in because of the

10  handgun.

11       Mr. Santiful, because we did not recover a handgun,

12  was allowed to continue to be in this drug organization.  We

13  made two direct buys from him.  One of them on March 9th, the

14  other one on March 15th.  Those were undercover buys.  They

15  are recorded.  The second one on March 15th, Mr. Santiful

16  actually tells the undercover where to go and who he is going

17  to meet with.  And so it shows a little more of a leadership

18  role in this organization.  Prior to the March 15th date

19  being done Mr. Santiful and the two individuals, Mr. Hill and

20  Mr. Williams, are seen coming out of what the agents had

21  identified as the stash house.

22       Now, this entire investigation came to a very

23  quick and dangerous end because on April 3rd, two of the

24  individuals that initiated this investigation, Mr. O'Cain

25  and Mr. Alston, were in the 2100 block of Aiken again where

1    this drug organization that Mr. Santiful was a part, was
2    working.
3          The undercover agent, and again this is all on
4    tape, rolled into the black, ask Mr. Alston -- asked
5    Mr. O'Cain, I apologize, for some ready, which is crack
6    cocaine.  Mr. O'Cain then spoke to Mr. Alston and before any
7    deal could be done on the video you will see two masked men
8    running around the undercover car and open fire on Mr. Alston
9    and Mr. O'Cain.  Mr. Alston returns fire.  The undercover
10   agent leaves the area.  Mr. Alston and Mr. O'Cain are seen
11   running to another residence in the 2100 block of Aiken.
12   Mr. Alston throws something.  The gun is later recovered
13   which matches the ballistics found in the block.
14         The two masked individuals take off in a car.  They
15   are later -- they are followed by ATF agents.  They are later
16   arrested at -- I believe it is Sinai -- Sinai or Johns
17   Hopkins.  It is Johns Hopkins, I apologize, Your Honor.  No
18   guns are recovered from then.
19         But then, as luck would have it, at least for this
20   investigation, just two weeks ago one of those two masked
21   individuals was released from State custody and was picked up
22   again for possession of a gun and it was the gun that was
23   used in -- on the April 3rd.
24         So, this is just to point out how dangerous this
25   organization is.  And, in fact, when ATF did a search

1   warrant on the O'Cain residence, Mr. Boykin, Mr. O'Cain and
2   Mr. Alston all lived in the residence together, another
3   loaded weapon was found.  So, this a very dangerous
4   situation.
5              And it just shows that I do not believe that there
6   are going to be conditions that are going to keep the
7   community safe because what is interesting about Mr. Santiful
8   besides being on the pole camera, being -- holding a gun and
9   candidly we did not recover that gun, Mr. Santiful has two
10  prior handgun charges.  He has one in 2006.  He received a
11  suspended sentence.
12             In 2008 he violated that probation and received
13  three years.  He violated that probation it appears because
14  he picked up yet another handgun violation.  All while how
15  as very young.  In 2008 he received three years for that --
16  I am assuming based on my prior experience in the State
17  system that those three years for the VOP and the gun ran
18  concurrently.  He then was released.  He violated his parole
19  in 2010.  He was sentenced to serve the remaining time.
20             He was then convicted in 2015 of possession of CDS.
21  And was on probation at the time of this event.
22             So, one thing is significant is that I believe
23  there has been a violation of probation filed in this
24  particular case or at least will be filed that is my
25  understanding from Pretrial.  But he had already violated his

1  probation.  So, it just shows that he cannot abide by
2  probation.  He cannot abide by parole.  He cannot abide by
3  the normal laws that society has.
4       So, Your Honor, we do believe at this time that
5  under 18 USC 3142, no conditions can be fashioned to insure
6  the safety of Mr. Santiful, the community and anyone around
7  Mr. Santiful.  And we do believe that detention is
8  appropriate in this matter.
9       THE COURT:  And, of course, it is a presumption
10 case?
11      MS. McLANE:  Correct, Your Honor.
12      THE COURT:  Okay.  Mr. Henslee.
13      MR. HENSLEE:  Thank you, Your Honor.  Well, I
14 certainly did hear a lot about why Mr. O'Cain, Mr. Alston
15 and Mr. Boykin might be considered very dangerous to the
16 public, you know, essentially a shootout on the street and
17 being found with all sorts of loaded handguns and what not.
18      There is this pole camera video we are told of --
19 I do not meant that in a critical sense.  I just mean I have
20 not seen it yet -- of my client ostensibly holding a handgun,
21 although that it not recovered so it is difficult to tell
22 exactly what that was.
23      He does have the prior illegal possession of
24 firearms, but I would note that he has never been convicted
25 of any sort of crime of violence.  He has no convictions on

1    his records for those.

2           He is essentially part of -- charged with the Count
3    1 conspiracy which is November to May and then also two
4    separate possession with intents, really distributions, to
5    someone who is working with the Government on March 9th and
6    March 15.

7           The State -- the Government certainly does enjoy
8    that rebuttable presumption but to say that there are no
9    conditions at all which would satisfy the Court as to, you
10   know, keeping the public safe from my client I think is
11   overstating it.

12          Certain home detention and other monitoring by
13   Pretrial Services could -- the would know where he is at
14   every second through that GPS monitoring.  His sister, who
15   stands ready to take him into the home.  She could be a third
16   party custodian.  You read in the report, she has a job, she
17   works.  No one lives with her.  And so he can stay there in
18   that residence.  And he can stay locked up 24 hours a day
19   unless he comes to see me or a doctor or something like that,
20   as well.

21          So, it is -- as the Government concedes, he is not
22   really much of flight risk.  He has got really nowhere to go
23   other than here.  And certainly, again, the GPS monitoring
24   can, you know, mitigate that.

25          So, given that we really do not have any

1   allegations of violence that might client has alleged to have
2   done I do not -- I think we can overcome that rebuttable
3   presumption because of the lack of any direct allegations of
4   violence from my client.
5         So, I think home detention would be an appropriate
6   safeguard for the community here.  I think Mr. Santiful has
7   not done anything yet that makes us think that he is going
8   to, you know, be violent in the community if he is on home
9   detention, so I would suggest that.
10        THE COURT:  Okay.  In accordance with the Bail
11  Reform Act, 18 USC Section 3142(f), the detention hearing has
12  been held.  I have concluded that the following facts
13  required the detention of the Defendant pending trial of this
14  case.
15        First of all, this is a case in which the
16  Government may properly seek detention.  This case is also
17  charged under 21 USC Section 841 and 846, if convicted one of
18  those counts carries a maximum of life, due to the amount of
19  controlled dangerous substance involved here.
20        Based on the Government's proffer there is probable
21  cause to believe that the Defendant did in fact commit the
22  offenses charged.  The Government is entitled to a
23  presumption under 3142(e).  And that presumption I do find
24  has not been overcome by -- anything that has been presented
25  on Mr. Santiful's behalf.

1            Some of the facts that I relied upon, first of all,
2    this conspiracy used firearms to traffic drugs.  That is the
3    number one problem with Baltimore City right now, is the
4    violence between drug trafficking organizations and firearms
5    on the street.  And here you have an actual shootout that
6    occurs in the middle of a controlled purchase by an
7    undercover agent.
8            He is seen on video with a firearm.  I know we have
9    not recovered that firearm, but I think it is pretty
10   persuasive and there is certainly probable cause that at one
11   point he possessed a firearm during the course of this drug
12   trafficking conspiracy.
13           And as we all know, as part of the conspiracy you
14   can be charged with anything and held accountable for
15   anything at sentencing that is reasonably foreseeable.  And
16   certainly this case with the firearms being recovered from
17   one of the Defendants and another firearm being recovered as
18   well, and one from the antagonist who came out from other
19   side who must have been involved in some dispute with two of
20   the co-conspirators here.
21           Certainly there is no question in my mind that this
22   is what presents the most danger to people in this City right
23   now.  The firearms on the streets with people trafficking
24   drugs.
25           This is a presumption case.  As I said, nothing has

1   been presented that would overcome that presumption.  There
2   is a life sentence, although there is no concern from the
3   Government's part that the Defendant would in fact appear for
4   trial.  And maybe conditions could be fashioned.  I have my
5   doubts with that since his response to supervision has been
6   poor in that he has not only violated his parole and
7   probation in the past but actually was convicted of those and
8   served additional time.
9               He also has a very serious criminal history.  And
10  he has a prior history of firearms convictions and some drug
11  convictions, as well.  Another activity on his record that is
12  very typical of a street level drug trafficker, along with
13  the firearms.  And that is, as I said, the number one reason
14  why people are dying on the streets in this City.
15              So, therefore I find that there are by clear and
16  convincing evidence, there are no conditions or combination
17  of conditions which will reasonably assure both the presence
18  at trial of the Defendant, more importantly the safety of the
19  community.  So, therefore the Defendant will remain detained.
20              Is there anything, Mr. Henslee, we need to address
21  in terms of medical issues?
22              MR. HENSLEE:  No, Your Honor.
23              THE COURT:  Okay.  Thank you.
24       (Whereupon, at 2:59 p.m., the proceedings were
25  concluded.)

C E R T I F I C A T E

      I certify that the foregoing is correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_Karen Morganelli_   06-22-18
_____
Karen Morganelli                Date
Certified Transcriber, CompuScribe
Certificate No.:  CET**D-577